UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

LAURENE M. WITTMER,                      )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )   Case No. 4:15-cv-00133-TWP-DML
                                         )
CAROLYN W. COLVIN, Acting Commissioner   )
of the Social Security Administration,   )
                                         )
                    Defendant.           )

## ENTRY ON JUDICIAL REVIEW

Plaintiff Laurene M. Wittmer ("Wittmer") requests judicial review of the final decision of

the Commissioner of the Social Security Administration (the "Commissioner"), denying her

applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act (the "Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act.[1]

For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

## I.    BACKGROUND

### A.    Procedural History

On December 28, 2011, Wittmer protectively filed an application for DIB, alleging a

disability onset date of November 1, 2010, due to fibromyalgia, irritable bowel syndrome, and

allergies.  She filed an application for SSI on July 13, 2012, alleging the same disability onset date

of November 1, 2010. Her claims were initially denied on June 25, 2012, and again on

reconsideration on September 10, 2012.  Wittmer filed a written request for a hearing on September

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted decisions.

13, 2012.  On January 22, 2014, a hearing was held via video conference before Administrative Law Judge Larry A. Temin (the "ALJ").  Wittmer was present and represented by counsel.  A vocational expert, George E. Parsons, appeared and testified at the hearing.  On February 27, 2014, the ALJ denied Wittmer's applications for DIB and SSI.  Following this decision, Wittmer timely requested review by the Appeals Council which later denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  On September 16, 2015, Wittmer filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.**   **Factual Background**

At the time of her alleged disability onset date, Wittmer was thirty-five years old, and she was thirty-eight years old at the time of the ALJ's decision.  Wittmer has a bachelor's degree from Hanover College with a double major in elementary education and Spanish.  She has a fairly good work history. Wittmer was employed as a full-time elementary school teacher from August 1998 through May 2003.  She stopped working as a school teacher because she could not tolerate working under the fluorescent lights in the classrooms.  Prior to the November 2010 onset of her alleged disability, she had a short-term front desk job at a motel and seasonal work at a state park as a front gate attendant.  For about seven months, she worked as an officer manager at an automotive shop.

A progress note for a wellness check on December 18, 2009, noted that Wittmer had "active problems" of fibromyalgia, irritable bowel syndrome, abdominal pain, and "taking blood thinners for a long time."  (Filing No. 14-9 at 71–72.)  The progress note indicated that Wittmer was taking Cymbalta for fibromyalgia, and she was taking medications to manage her allergies.  *Id.*

2

In January 2010, Wittmer went to the hospital because she was experiencing abdominal pain. (Filing No. 14-10 at 2.) A CT scan revealed findings consistent with appendicitis. Wittmer underwent surgery to have her appendix removed. (Filing No. 14-9 at 200.) Throughout 2010 and 2011, she met with medical providers, complaining of abdominal pain, nausea, and vomiting, and she had x-rays, CT scans, and ultrasounds performed. These tests generally revealed normal findings. Some of Wittmer's treatment notes indicated that she had reflux, and many of the notes indicated continued problems with fibromyalgia and irritable bowel syndrome. (Filing No. 14-9 at 190.) During this time period, much of Wittmer's medical care was provided by nurse practitioner Heidi Frey ("Ms. Frey").

In August 2010, Wittmer was seen for chest pressure and shortness of breath. (Filing No. 14-9 at 66.) It was determined that Wittmer had bronchitis, and she was prescribed medication. More than a year later, in October 2011, Wittmer again complained of chest pain and shortness of breath. She had a chest x-ray performed, which revealed normal findings. (Filing No. 14-9 at 186.)

In April 2012, Wittmer had a chest x-ray and blood work completed because of a fever and cough. (Filing No. 14-8 at 17.) The chest x-ray revealed normal findings. A few days later, she was hospitalized because of abdominal pain, fever, and dehydration. Tests indicated a small hiatal hernia with reflux as well as gastritis. Irritable bowel syndrome also was noted. Some of her blood work was elevated and chest x-rays were normal. She did have a fever. The hospital notes indicated that "[i]t is unclear if she could have lupus." (Filing No. 14-8 at 2–3, 19, 24.)

On May 18, 2012, Wittmer presented to Steven Neucks, M.D. ("Dr. Neucks"), a rheumatologist, because of a referral from Ms. Frey. (Filing No. 14-10 at 20.) Dr. Neucks noted Wittmer's prior diagnoses of fibromyalgia, irritable bowel syndrome, and blood clots. He noted her pain, stiffness, and fatigue as well as her various medications. Dr. Neucks recorded Wittmer's

complaints of headaches, rashes and other symptoms.  He noted her family history of rheumatoid arthritis, and when Wittmer had been recently tested at the hospital, she had a positive antinuclear antibody "ANA" test.  She also had a fever with no known underlying cause. In connection with her blood clots, she was found to have a lupus anticoagulant.

Dr. Neucks' physical examination of Wittmer revealed normal findings.  However, Dr. Neucks indicated that Wittmer had Raynaud's phenomenon, a sign of lupus.  *Id.* at 21.  Dr. Neucks' joint examination of Wittmer revealed tender points, swelling in the knee and wrist joints, DIPs 1+ bony enlargement, and knees 1+ bony enlargement, but otherwise good range of motion, good alignment, and normal findings.  *Id.* at 20–21.  His impression was to strongly consider a diagnosis of systemic lupus erythematosus.  He noted that Wittmer's fibromyalgia was "well documented" and that he believed Wittmer is "a candidate for disability."  *Id.* at 22.  He recommended that Wittmer increase her Cymbalta to treat the fibromyalgia, and he started her on Plaquenil to treat lupus.

Wittmer returned to Dr. Neucks for a follow-up appointment on July 16, 2012, for her pain and stiffness.  Dr. Neucks noted Wittmer's achy and stiff joints, fever, and malar rash.  Dr. Neucks gave a diagnosis of systemic lupus erythematosus and noted that his impression and treatment plan remained unchanged.  (Filing No. 14-10 at 19.)

At her next follow-up appointment with Dr. Neucks on October 11, 2012, Wittmer had trigger points on her neck and back and had moderately stiff and achy joints.  She had a malar rash and continued having occasional fevers.  Dr. Neucks noted that Wittmer's disability applications had been denied, and he also noted that he believed her condition had worsened since her visit in July.  He continued to diagnose Wittmer with lupus.  (Filing No. 14-13 at 10.)

At Wittmer's follow-up appointment on January 15, 2013, Dr. Neucks noted that her joints were mildly achy and stiff, and she still had a rash and occasional fever. His impression remained unchanged from the October 2012 visit. *Id.* at 9. Wittmer had additional follow-up appointments with Dr. Neucks on April 15 and July 16, 2013, which were generally unchanged from the previous visits with the continued diagnosis of lupus. *Id.* at 7–8.

On October 24, 2013, Wittmer went to Dr. Neucks for a "lupus follow-up." Dr. Neucks indicated that Wittmer's lupus led to fatigue, weakness, numbness, and nausea, and was exacerbated by walking and weather. He noted that her symptoms were relieved with rest. He also noted that Wittmer reported her pain was constant and was usually an eight on a scale up to ten. Dr. Neucks recorded Wittmer's medical history of lupus, fibromyalgia, irritable bowel syndrome, blood clots, and rash among other things. In reviewing Wittmer's symptoms, Dr. Neucks noted her fatigue, joint pain, swollen joints, stiffness, abdominal pain, nausea, vomiting, headaches, and dizziness. Upon physical examination, most of Wittmer's joints were within normal limits, but she did have trigger points in her neck and back and a tender, swollen right knee with decreased range of motion. She also still had a malar rash. Dr. Neucks' diagnosis of lupus remained unchanged. (Filing No. 14-13 at 3–6.)

Approximately two months before this last follow-up appointment, Dr. Neucks completed a medical and work functioning assessment of Wittmer for an Indiana state agency. In his September 3, 2013 assessment, Dr. Neucks opined that Wittmer was totally unable to participate in employment and training activities based on her primary diagnoses of lupus and fibromyalgia. He opined that Wittmer was unable to sit, stand, walk, lift, grasp, push, pull, and bend. (Filing No. 14-12 at 99.)

In May 2012, John Nieters, M.D. ("Dr. Nieters") performed a consultative examination of Wittmer as part of the disability application process.  (Filing No. 14-8 at 76.)  Wittmer reported to Dr. Nieters that she was diagnosed with fibromyalgia in the spring of 2009 by nurse practitioner Ms. Frye.  She reported that her fibromyalgia caused fatigue, decreased focus, and pain throughout her entire body and especially in her joints.  Wittmer was prescribed Cymbalta, which helped initially.  She also reported to Dr. Nieters that she was diagnosed with irritable bowel syndrome in 1994 although she did not have any tests or endoscopies to objectively confirm this.  Dr. Nieters noted that in 2003, Wittmer was hospitalized, and the doctor agreed that she had irritable bowel syndrome even though no tests were performed.  Dr. Nieters also noted that Wittmer had a colonoscopy performed in 2010, which was negative.  Her irritable bowel syndrome was manifested by abdominal cramping and constipation.  Wittmer reported to Dr. Nieters that the pain in her wrists, knees, and ankles rates as an eight on a scale up to ten.

Upon physical examination, Dr. Nieters discovered that Wittmer had eighteen of eighteen trigger points for fibromyalgia.  She had many tender points in her extremities, bilateral cervical spasms and paraspinal spasms in her thoracic and lumbar area.  However, concerning her physical functioning, she was able to lift both legs fifty inches high, and her gait and station were normal.  Her reflexes and sensory examination was normal.  Her strength was 5/5, and her hand grip was 5/5.  She was able to walk, jump, squat, and touch the floor without any problems.  She had no deformities, inflammation, pain, swelling, stiffness, or abnormal motion in any of her joints.  Dr. Nieters opined that Wittmer had fibromyalgia, osteoarthritis, and irritable bowel syndrome among other things.  (Filing No. 14-8 at 76–79.)

Throughout the time period covered by the medical evidence in the record, Wittmer also sought medical care for sinus congestion, allergies, high cholesterol, high triglycerides, and blood clots.  These conditions have been treated with various medications.

During the hearing before the ALJ, Wittmer testified that she has an eight year old son who lives with her in an apartment.  She is his primary caregiver.  She explained that she is unable to play outside with her son because the cold weather and the sun affect her.  She testified that she is unable to work because of her fibromyalgia and lupus, which cause fatigue and pain.  She explained that her lupus is worse than her fibromyalgia.  (Filing No. 14-2 at 40.)  Wittmer testified that she cannot be out in the sun because it causes headaches, fever, and a rash.  She cannot sit very long, and she cannot stand.  She testified that, with the help of a cane, she can stand for about five to ten minutes.  She explained that she cannot walk from the back of a parking lot to the store, so she uses the handicap parking at the front of parking lots.  She has difficulty getting up in the morning because of her fatigue and stiffness.

Wittmer testified that she spends most of her time laying on the couch or at appointments with doctors.  She can drive only short distances.  She no longer participates in recreational activities.  She explained that she takes care of her own personal hygiene but does so every two to three days, not every day.  She testified that she pays her own bills, and she used to grocery shop.  She explained that, for about the last year, she could no longer grocery shop, and her mother or boyfriend go to the store for her.  She does not cook; she just makes microwave meals or sandwiches.  She does the dishes, but only once every couple of weeks.  She does the laundry, and she vacuums and sweeps once every two to three months.  She takes out the garbage once a week, but sometimes her neighbor helps her by taking out her garbage.  Wittmer explained that she was

most recently seen by her treating physician, Dr. Neucks, two days before the hearing on January 20, 2014. *Id.* at 43, 49–52.

## II.   DISABILITY AND  STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after he establishes that he is disabled.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors.  20 C.F.R. § 416.920(a)(4)(i).  At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled.  20 C.F.R. § 416.920(a)(4)(ii).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the

fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because

of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

## III.   THE ALJ'S DECISION

The ALJ first determined that Wittmer met the insured status requirement of the Act through September 30, 2013. The ALJ then began the five-step analysis. At step one, the ALJ found that Wittmer had not engaged in substantial gainful activity since November 1, 2010, the alleged disability onset date. The ALJ noted that, while Wittmer performed some work after her alleged disability onset date, the work did not rise to the level of substantial gainful activity. At step two, the ALJ found that Wittmer had the following severe impairments: systemic lupus erythematosus, fibromyalgia, irritable bowel syndrome/gastritis, and allergic rhinitis. At step three, the ALJ concluded that Wittmer does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Wittmer had an RFC to perform sedentary work with the following limitations:

> The claimant can lift/carry/push/pull up to 10 pounds occasionally and five pounds frequently. She can stand and/or walk for up to two hours in an eight-hour workday. She can sit for up to six hours in an eight-hour workday. She can only occasionally stoop, kneel, crouch, balance, and climb ramps and stairs occasionally. She should

never crawl, use vibratory tools or power tools, climb ladders/ropes/scaffolds, or work at unprotected heights or around hazardous machinery. She should have no concentrated exposure to fumes, noxious odors, dusts, or gases.

(Filing No. 14-2 at 20).

At step four, the ALJ determined that Wittmer was capable of performing her past relevant work as an officer manager. The ALJ went on to determine at step five that Wittmer was not disabled because there were jobs that existed in significant numbers in the national economy that Wittmer could perform, considering her age, education, past work experience, and RFC. Those jobs included general office clerk, telephone quotation clerk, and coupon counter. Therefore, the ALJ denied Wittmer's applications for SSI and DIB because she was not disabled.

## IV.  DISCUSSION

In her request for judicial review, Wittmer argues that remand is appropriate because the ALJ (1) failed to properly consider her severe impairment of fibromyalgia throughout the entire disability evaluation, (2) should have given less weight to Dr. Nieters' opinion and more weight to Dr. Neucks' opinion, (3) "cherry-picked" evidence, and (4) failed to build a logical bridge between the evidence and the conclusions.

## A.  Fibromyalgia and SSR 12-2p

Regarding the ALJ's consideration of fibromyalgia during the disability evaluation, Wittmer points to Social Security Ruling 12-2p as the guide that the ALJ should have but failed to follow. She asserts that it was erroneous to conclude that she has the severe impairment of fibromyalgia and at the same time conclude that she is not disabled.

> As with any claim for disability benefits, before we find that a person with an MDI [medically determinable impairment] of FM [fibromyalgia] is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.

11

SSR 12-2p ("[o]nce we establish that a person has an MDI of FM, we will consider it in the sequential evaluation process to determine whether the person is disabled").  Thus, a claimant may have a medically determinable impairment of fibromyalgia but still not be disabled pursuant to the Act.  Deciding whether a medically determinable impairment of fibromyalgia exists is only one of the steps in the disability evaluation.

In this case, the ALJ quoted at length the guidance established in SSR 12-2p and then went on to follow that guidance, step-by-step, to determine that Wittmer had a medically determinable impairment of fibromyalgia that was severe—a determination favorable to Wittmer.  (Filing No. 14-2 at 16–17.)  After discussing his review of the medical evidence in the record, including the records from Dr. Nieters and Dr. Neucks, the ALJ concluded that the physical examinations of Wittmer revealed generally normal physical strength and functional abilities.  Based on these conclusions, the ALJ then fashioned a specific RFC for Wittmer and used this RFC at Steps 4 and 5 of the disability evaluation.  Therefore, the ALJ sufficiently considered Wittmer's impairment of fibromyalgia throughout the disability analysis, and Wittmer's argument concerning SSR 12-2p and fibromyalgia is unavailing.

**B.**    **Weight Given to Physicians' Opinions**

Wittmer next argues that the ALJ should have given less weight to Dr. Nieters' medical opinion because it was internally inconsistent when he stated that there were few abnormal findings and at the same time diagnosed fibromyalgia.  Wittmer asserts that, after giving Dr. Nieters' opinion less weight, the ALJ would have been left with her treating physician, Dr. Neucks' opinion only, which then should have been given greater weight and which opined greater limitations and disability. The Court first notes that it may not reweigh the evidence or substitute its judgment for that of the ALJ when he determined how much weight to give to specific evidence.

*Overman*, 546 F.3d at 462.  The ALJ sufficiently explained why he gave specific weight to the physicians' opinions based on their physical examinations of Wittmer. For example, the ALJ detailed specific treatment notes by Dr. Neuck that he believed undermined his assessment that Plaintiff could not perform any tasks. The ALJ also considered Dr. Neuck's opinion that Plaintiff could perform none of the listed tasks, to be inconsistent with the results of Dr. Nieters' examination, which revealed that Plaintiff had full grip strength, no problem with fine manipulation, motor strength, gait or station.

Furthermore, Dr. Neucks' opinion that Wittmer is "a candidate for disability," (Filing No. 14-10 at 22), is not entitled to "any special significance" because the "decision about whether [claimants] meet the statutory definition of disability" is "reserved to the Commissioner." 20 C.F.R. § 404.1527(d).  In making the disability determination, the Commissioner will "review all of the medical findings and other evidence that support a medical source's statement that you are disabled.  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."  *Id.*  Disability is a legal matter decided by the Commissioner, not by a treating physician.  *See Lennon v. Chater*, 1996 U.S. App. LEXIS 15420, at *5–6 (7th Cir. June 25, 1996) ("whether that [impairment] constituted a disability within the meaning of the Social Security Act is a *legal* determination for the ALJ to make").

Thus, Wittmer's arguments about the weight given to the opinions of Dr. Neucks and Dr. Nieters and Dr. Neucks' opinion that Wittmer is a candidate for disability are not helpful for Wittmer to obtain a remand of this case to the ALJ.

**C.**   **Cherry-picking Evidence and Failing to Build a Logical Bridge Between the Evidence and the Conclusion**

Wittmer asserts that the ALJ cherry-picked evidence that supported a finding of not disabled while ignoring evidence that supported disability.  She also asserts that the ALJ failed to

build a logical bridge between the evidence and his conclusion.  In making this argument, Wittmer focuses on the evidence of her fibromyalgia.  She explains that the ALJ focused on Dr. Nieters' report of "few abnormal findings" to support his analysis and conclusions throughout the decision while ignoring the other medical evidence that showed disability, and thereby, the ALJ failed to build a logical bridge between all the relevant evidence and the conclusion.

As the Court has noted, the ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability, *Scheck*, 357 F.3d at 700, and the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron*, 19 F.3d at 333.  The Court reviews the ALJ's decision deferentially but cannot uphold the decision if it "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker*, 597 F.3d at 921.

The Commissioner responds to Wittmer's argument by explaining that the ALJ adequately considered all the relevant evidence, and the ALJ was not required to address every piece of evidence in each section of his decision nor repeat the factual analysis throughout each section, citing to *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("it is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five").  The Commissioner explains that substantial evidence supported each conclusion in the ALJ's decision.  Wittmer replies that she "agrees with the Commissioner that the ALJ [need] not repeat information under each heading of the decision." (Filing No. 18 at 1.)

In this case, the ALJ discussed Wittmer's impairments, the symptoms of those impairments, and the treatment that she sought for her impairments.  The ALJ discussed Wittmer's

subjective complaints to her treating and consultative physicians:  pain estimated as an eight on a scale up to ten, headaches, abdominal pain, fatigue, numbness, weakness, and nausea.  He also discussed objective symptoms, tests, and findings reported by medical professionals:  fever, rash, vomiting, abnormal blood work, and a normal colonoscopy and chest x-rays.  The ALJ also discussed the physical examinations in the record, which showed normal as well as some decreased range of motion, full strength, normal gait and station, and an ability to jump, walk, sit, squat, etc.  The ALJ further considered and discussed Wittmer's statements to treating and consultative medical professionals about her daily activities as well as her testimony during the hearing.  He also considered and discussed Wittmer's mother's statements.   All of the evidence that was considered included both favorable and unfavorable evidence regarding functioning and disability.

The ALJ reviewed Wittmer's subjective statements regarding her pain and fatigue and properly assessed her credibility.  The ALJ discounted Wittmer's self-reported symptoms found in the medical records and in her testimony.  He also gave less weight to Dr. Neucks' functioning assessment.  This was not erroneous or impermissible because the ALJ, based on all the evidence, logically explained the reasoning for his decisions to discount specific evidence and the subjective complaints.  The ALJ pointed to Wittmer's statements made during a psychological evaluation that were inconsistent with her hearing testimony. He also pointed to the fact that she received unemployment benefits, which required Wittmer to state that she was able and willing to work which was inconsistent with an inability to work under the Act.

Based on all of the evidence in the record and his assessment of the evidence, the ALJ then determined an appropriate RFC for Wittmer and used that RFC to complete Steps 4 and 5 of the disability evaluation.   While the ALJ did not discuss every piece of evidence during his RFC determination, it is apparent that he did consider all the evidence, both favorable and unfavorable,

when making his RFC determination and continuing through the remainder of the disability evaluation. After reviewing the ALJ's decision and the record evidence, the Court determines that the ALJ did not cherry-pick evidence or fail to build a logical bridge between the evidence and the conclusion. Therefore, remand is not warranted in this case.

## V.   <u>CONCLUSION</u>

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED.** Wittmer's appeal is **DISMISSED**.


**SO ORDERED.**


Date: 10/19/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:


William Joseph Jenner
JENNER, PATTISON, HENSLEY & WYNN, LLP
jjenner@wjennerlaw.net

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov